FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 18, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AUSTON WALDROP, individually and behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BASIC AMERICAN, INC., a Delaware corporation,<br><br>Defendant. | No. 2:25-CV-00382-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>**ECF No. 10** |

Before the Court is Plaintiff's Motion to Remand. ECF No. 10. Douglas Han, Shunt Tatavos-Gharajeh, and April Rhéaume represent Plaintiff. Aaron Doyer and James Shore represent Defendant. The Court has reviewed the motion and record and is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion.

## BACKGROUND

Plaintiff, on behalf of himself and all others similarly situated, initiated this class action suit in Grant County Superior Court on July 11, 2025. ECF No. 1 at

ORDER - 1

29-44.  Plaintiff alleges Defendant "engaged in a systemic scheme of wage and hour abuses against its Washington hourly-paid or non-exempt employees," including by:

> (1) failing to provide employees with the rest breaks to which they are entitled; (2) failing to provide employees with the meal breaks to which they are entitled; (3) failing to pay all minimum wages to employees for all hours worked; (4) failing to pay all overtime wages to employees when they work more than 40 hours in a workweek; and (5) failing to accrue sick leave for and failing to allow for the usage of paid sick leave for qualifying absences by employees; and (6) making unlawful deductions and rebates from employees' wages.

*Id.* at 30 ¶ 1.1.  Plaintiff's proposed class consists of "[a]ll hourly-paid or non-exempt employees of Defendant in the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action." *Id.* at 31 ¶ 4.1.  Plaintiff asserts eight Washington statutory claims and seeks compensatory and exemplary damages, attorneys' fees and costs, and pre-judgment and post-judgment interest.  *Id.* at 38-44.

On September 24, 2025, Defendant removed this action by invoking the Court's jurisdiction under the Class Action Fairness Act ("CAFA").  ECF No. 1 at 1-20.  First, Defendant maintained the proposed class "would include approximately 337 current and former employees." *Id.* at 4 ¶ 8 (citing ECF No. 2 at 2 ¶ 2).  Next, Defendant noted the parties were minimally diverse: Plaintiff is a citizen of Washington and Defendant is incorporated in Delaware and is headquartered in California.  *Id.* at 6 ¶¶ 12, 14-15 (citing ECF No. 1 at 31 ¶ 3.1;

ORDER - 2

1  ECF No. 2 at 2 ¶ 3). Third, Defendant estimated the amount in controversy as
2  exceeding $12,261,322, above and beyond CAFA's $5,000,000 floor. *Id.* at 9-18.
3  In support of its amount in controversy estimate, Defendant reasoned four of
4  Plaintiff's causes of action "would themselves exceed" CAFA's amount in
5  controversy requirement. *Id.* at 9 ¶ 21. For Plaintiff's first, second, and third
6  claims for relief, Defendant estimated the value of alleged violations as
7  $4,904,529, not including attorneys' fees and costs. *Id.* at 15-16 ¶ 41. Adding
8  Plaintiff's eight claims for relief, Defendant estimated the total value of alleged
9  violations would be $9,809,058. *Id.* at 16 ¶ 42. Finally, using a benchmark of
10 25% of Plaintiff's potential recovery, Defendant estimated attorneys' fees would
11 equal at least $2,452,264—bringing the total amount in controversy, for just four
12 out of eight causes of action, to $12,261.322. *Id.* at 18 ¶ 45.
13     Plaintiff, disputing Defendant's amount in controversy estimation, filed the
14 instant motion to remand on October 24, 2025. ECF No. 10.

15                          **LEGAL STANDARD**

16     In general, "any civil action brought in a State court of which the district
17 courts of the United States have original jurisdiction, may be removed by the
18 defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). "Congress
19 enacted [CAFA] to facilitate adjudication of certain class actions in federal court."
20 *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). CAFA

ORDER - 3

permits a defendant to remove a class action to federal court if there is minimal diversity between the parties, if the class contains at least 100 members, and, if the amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d), 1453(b).

A removing defendant's "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "Evidence establishing the amount is required ... only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* "If the allegation is disputed, then the party seeking removal—and invoking the jurisdiction of the federal courts—bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). "The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

## DISCUSSION

The parties do not dispute two out of three of CAFA's jurisdictional requirements. First, the size of the putative class exceeds 100 people. ECF No. 1 at 4 ¶ 8 (citing ECF No. 2 at 2 ¶ 2). Second, there is minimal diversity of citizenship: Plaintiff is a citizen of Washington and Defendant is organized under

ORDER - 4

the laws of Delaware and has its principal place of business in California. *Id.* at 6 ¶¶ 12, 14-15 (citing ECF No. 1 at 31 ¶ 3.1; ECF No. 2 at 2 ¶ 3). Plaintiff argues, however, that the $5 million amount in controversy is not met. The Court thus determines whether Defendant's assumptions are reasonable considering the allegations in the Complaint. *Perez*, 131 F.4th at 808; *see Ibarra*, 775 F.3d at 1198 (noting courts must consider "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure"). As discussed below, the Court finds Defendant has proven, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

    1. *First, Second, Third, and Eighth Claims for Relief*

In its opposition to Plaintiff's motion, Defendant estimates the value of these claims to be $4,708,350.[1] ECF No. 12 at 13. Defendant's calculation is reproduced here:

---

[1] As noted above, Defendant's Notice of Removal employs higher figures for these claims and, in turn, estimated attorneys' fees. *See* ECF No. 1 at 15-16 ¶¶ 41-42, 18 ¶ 45. The Court need not assess the reasonableness of those estimates, however, because Defendant's assumptions made in opposition to Plaintiff's motion satisfy CAFA's amount of controversy and are both reasonable and amply supported.

ORDER - 5

| | |
|---|---|
| Defendant's Calculation, Assuming a 100% Violation Rate | $4,904,529 |
| Reduced from 50 Weeks to 48 Weeks | $4,708,350 |
| Reduced to 50% Violation Rate | $2,354,175 |
| Including Willfulness Damages | $4,708,350 |

*Id.*

In support of its base calculation, Defendant notes it employed approximately 132 hourly employees in Washington from July 2022 to July 2023; approximately 193 hourly employees in Washington from July 2023 to July 2024; and approximately 186 hourly employees in Washington from July 2024 to July 2025. ECF No. 1 at 11 ¶ 30 (citing ECF No. 2 at 2 ¶ 5). For this three-year period, Defendant asserts, hourly employees in Washington made, on average, $22.52 per hour. *Id.* at 12 ¶ 32 (citing ECF No. 2 at 2 ¶ 4). Defendant further asserts that "[t]he majority of hourly employees in the putative class worked rotating 12-hour shifts during the putative class period," although "[s]ome employees work standard 40-hour weeks, consisting of five 8-hour shifts" and others "work rotating 12-hour shifts, alternating between 36-hour and 48-hour workweeks." ECF No. 2 at 3 ¶ 6. These numbers were supported by a declaration from Jennifer Anderson, Defendant's General Counsel and Vice President of Human Resources. *See* ECF No. 2 at 1 ¶ 1. The Court finds Ms. Anderson's data constitutes competent evidence. *See, e.g., Perez*, 131 F.4th at 808 (noting that "in a wage-and-hour case,

ORDER - 6

the number of employees in the class may be most easily determined by examining the defendant'' employment records.  It therefore may make sense to expect a defendant to introduce evidence of that number.") (citation omitted); *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 974 (E.D. Cal. 2023) (accepting declaration from defendant's Human Resources Director).

Assuming a 100% violation rate—that is, "Plaintiff and all putative class members received no compliant meal and rest periods or overtime compensation during the class period"—Defendant provides the following estimations: the value of the alleged violations for employees working five 8-hour shifts would equal $1,922,687; for employees working rotating 12-hour shifts for 36-hour weeks would equal $1,076,737; and for employees working rotating 12-hour shifts for 48-hour weeks would equal $1,905,105.  ECF No. 1 at 12 ¶ 33, 36.  The sum of these estimates is $4,904,529.  The Court is satisfied that Defendant's methodology underlying these estimates is reasonable.  *See id.* at 11-15 ¶¶ 31-41; *Jauregui*, 28 F.4th at 993 ("As is inescapable at this early stage of the litigation, the removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable.") (citation, quotation marks, and footnote omitted).  Further, even assuming Plaintiff's own calculations are also reasonable, *see* ECF

ORDER - 7

No. 13 at 8-10 (arguing that the amount in controversy does not exceed $4,228,693), that is not dispositive. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite amount.") (simplified).

Still, Defendant does not rely on a 100% violation rate—which Plaintiff challenged in his motion to remand. *See* ECF No. 10 at 14-20. Instead, after first reducing the number of weeks worked to 48, Defendant halved the violation rate to 50%. ECF No. 12 at 11-12. The Court is satisfied that Defendant's estimated violation rate is drawn from a reasonable interpretation of the Complaint's allegations. *See, e.g.*, ECF No. 1 at 34-38 (alleging Defendant engaged in "common course" of violations). As Defendant correctly notes, "Plaintiff has neither defined the term [common course] nor offered evidence supporting any alleged frequency." ECF No. 12 at 9. Accordingly, Defendant permissibly estimated a 50% violation rate. *Cf. Perez*, 131 F.4th at 809 ("[Defendant] tethered that assumption to the language in the complaint—namely, that it had committed the alleged violations 'at times' and 'throughout the statutory period.'"). As such, Defendant need not independently support this estimate with competent evidence. *See id.*

1    Finally, the Court assesses the reasonableness of Defendant's estimation of
2    willfulness damages. Defendant's inclusion of "double damages" sounds in
3    Plaintiff's Eighth Claim for Relief, which asserts a violation of RCW 49.52.050.
4    ECF No. 1 at 43-44 ¶¶ 13.1-13.5. As noted in the Complaint, "RCW 49.52.070
5    provides that any employer who violates the provisions of RCW 49.52.050 shall be
6    liable in a civil action for twice the amount of wages withheld, attorneys' fees, and
7    costs." *Id.* at 43 ¶ 13.4. Defendant's application of double damages reasonably
8    tracks the language of the Complaint. Plaintiff cursorily notes that he "does not
9    concede that all class members in Washington would be subject to double
10   damages, nor that this assumption is reasonable," ECF No. 13 at 10, failing to
11   show Defendant's application of double damages was *unreasonable* under the
12   circumstances. *See Perez*, 131 F.4th at 808; *Ibarra*, 775 F.3d at 1198.

13   The Court thus finds Defendant reasonably estimated these four claims total
14   at least $4,708,350.

15       *2. Attorneys' Fees*
16       "Because the law entitles [Plaintiff] to an award of attorneys' fees if he is
17   successful, such future attorneys' fees are at stake in the litigation, and must be
18   included in the amount in controversy." *Fritsch v. Swift Transportation Co. of*
19   *Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see* RCW 49.49.030; RCW
20   49.46.090; RCW 49.52.070. Applying a 25% award to $4,708,350, Defendant

ORDER - 9

estimates attorneys' fees totaling at least $1,117,087.5.  *See* ECF No. 12 at 15-16.  Plaintiff does not meaningfully contest the reasonableness of a 25% attorneys' fee award.  *See* ECF No. 10 at 21-22 (disputing attorneys' fees estimate based on Defendant's estimate of the value of the claims—not the 25% rate); ECF No. 13 (applying 25% rate to Plaintiff's own calculations).  The Court finds Defendant's 25% rate is reasonable.  *See, e.g.*, *Serriah*, 707 F. Supp. 3d at 979 ("The benchmark for class action attorneys' fees in the Ninth Circuit is 25%, 'with 20-30% as the usual range.'") (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)); *Arias*, 936 F.3d at 928 ("Marriott argues that attorneys' fees should be estimated at 25 percent of the potential damages.  Although such an estimate might be reasonable, we have declined to adopt a per se rule that the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery.") (citation and quotation marks omitted); *Fritsch*, 899 F.3d at 796 n.6 ("We do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate.").  Applying a 25% rate to $4,708,350, the total amount in controversy would equal $5,885,438.50.[2]

---

[2] Were the award reduced to 10%, the total amount in controversy would equal $5,179,185—still above CAFA's $5 million amount in controversy floor.

ORDER - 10

The Court thus finds Defendant has reasonably estimated attorneys' fees and, by coupling only four claims with attorneys' fees, has proven by a preponderance of the evidence that the amount in controversy exceeds $5 million.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand is denied.

**Accordingly, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Remand, **ECF No. 10**, is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to the parties.

DATED December 18, 2025.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 11